UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN J. CICERO,

                      Plaintiff,

        -v-

INTELLOR GROUP, INC. and RICHARD A. RIST,

                    Defendants.

Civ. No. 18-cv-6934-CJS

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

**BURNS & SCHULTZ LLP**
Andrew M. Burns
Jill K. Schultz
179 Sully's Trail, Suite 202
Pittsford, New York 14534
Telephone: (585) 385-7900
E-mail: aburns@burnsandschultz.com
E-mail: jschultz@burnsandschultz.com

Attorneys for plaintiff Brian J. Cicero

## PRELIMINARY STATEMENT

Plaintiff Brian J. Cicero ("Cicero") respectfully submits this Memorandum of Law in opposition to defendants Intellor Group, Inc. ("Intellor") and Richard A. Rist's ("Rist") Motion to Dismiss Cicero's complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).[1]

On November 27, 2018, Cicero filed a summons and complaint ("Complaint") against Intellor and Rist, Intellor's sole owner and Chief Executive Officer, in the Supreme Court, Monroe County, New York. As explained in the Declaration of Jill K. Schultz ("Schultz Declaration") submitted with this Memorandum of Law, this is the first action commenced involving Cicero and his employment with Intellor and Rist.

On December 21, 2018, Intellor and Rist removed the action to this Court and filed their motion to dismiss. (ECF Nos. 1, 3).

In his Complaint, Cicero, a commissioned sales employee, seeks compensation from defendants for their failure to pay him the commissions and wages he earned for the six years prior to the commencement of his action pursuant to the New York Labor Law ("Labor Law"). Cicero also seeks a declaratory judgment that an agreement entered into in July 2017 between Cicero and Intellor is not enforceable and Cicero did not breach the agreement.

Because Cicero sufficiently pled his causes of action in his Complaint for violation of the Labor Law and for a declaratory judgment, defendants' motion to dismiss should be denied.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. 2018) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The

---

[1] Cicero acknowledges his Second Cause of Action brought pursuant to New York Business Corporation Law § 630(a) is premature and consents to its dismissal without prejudice.

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

"A claim is facially plausible 'when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Progressive Credit*, 889 F.3d at 48 (*quoting Iqbal*, 556 U.S. at 678).

In *Twombly*, the Supreme Court stated the following regarding a motion to dismiss for

failure to state a claim pursuant to Rule 12(b)(6):

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and
> plain statement of the claim showing that the pleader is entitled to
> relief, in order to give the defendant fair notice of what the claim is
> and the grounds upon which it rests. While a complaint attacked
> by a Rule 12(b)(6) motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide the grounds of his
> entitlement to relief requires more than labels and conclusions, and
> a formulaic recitation of the elements of a cause of action will not
> do. Factual allegations must be enough to raise a right to relief
> above the speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

In applying the plausibility standard, the Court is guided by two working principles:

> First, although a court must accept as true all of the allegations
> contained in a complaint, that tenet is inapplicable to legal
> conclusions, and threadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements, do not suffice.
> Second, only a complaint that states a plausible claim for requests
> survives a motion to dismiss, and determining whether a complaint
> states a plausible claim for relief will be a context-specific task that
> requires the reviewing court to draw on its judicial experience and
> common sense.

*Casey v. Pittsford Central School District*, 2018 WL 6330241, at *5 (W.D.N.Y. 2018) (*quoting*

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

The application of the plausibility standard is "context-specific" and requires evaluating the allegations of the complaint "as a whole." *U.S. ex rel. Davern v. Hoovestol, Inc.*, 2015 WL 6872427, at *5 (W.D.N.Y. 2015).

In resolving a motion to dismiss, the Court may consider matters of which judicial notice may be taken. *Davern*, 2015 WL 6872427, at *5.  A Court may take judicial notice of records of court proceedings. *Glover v. Connecticut Dept. of Correction*, 575 F. Supp. 2d 390, 393 n. 1 (D. Ct. 2008).

For the reasons discussed below, defendants' motion to dismiss should be denied.[2]

## ARGUMENT

### I.  CICERO STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR DEFENDANTS' VIOLATION OF THE LABOR LAW

#### A.    Cicero Alleges Sufficient Facts to State a Violation of the Labor Law

Defendants erroneously argue Cicero's cause of action for violation of the Labor Law must be dismissed for alleging insufficient facts to infer defendants' liability.

Cicero's Complaint alleges Intellor employed Cicero as a commissioned salesperson from December 2007 to October 10, 2018.  Complaint ¶ 7.  In December 2007, Intellor, through Rist, presented Cicero with the Offer Letter dated December 10, 2007.  Complaint ¶ 12; Exhibit 1 to the Complaint.  While the Offer Letter does not comply with Labor Law §191(1)(c) because it does not meet various requirements of the statute, the Offer Letter does specify how Cicero would earn commissions.  Complaint ¶ 13.

Cicero alleges Labor Law §191(1)(c) applied to Intellor's employment of Cicero.  Complaint

---

[2] Cicero believes defendants' motion should be denied.  However, if the Court determines Cicero's Complaint is deficient in some respect, Cicero requests leave to file an amended complaint to correct any identified pleading deficiency.  Cicero is aware of the requirement in the Court's Local Rule 15.  Cicero explains in the Schultz Declaration the reason why Cicero has not submitted a proposed amended pleading.  *See* Schultz Declaration ¶¶ 27 – 29. *See also Lusk v. Serve U Brands, Inc.*, 2018 WL 826857, at *4 (W.D.N.Y. 2018); *Mihilitsas v. Howard*, 102 F. Supp. 3d 471, 478 (W.D.N.Y. 2015).

-3-

¶ 9.  At no time while it employed Cicero as a commissioned salesperson did Intellor comply with Labor Law §191(1)(c).  Complaint ¶ 10.  Because Intellor did not comply with the requirements of Labor Law §191(1)(c), there is "a presumption that the terms of employment that the commissioned salesperson has presented are the agreed terms of employment."  Complaint ¶ 11.

Cicero's Complaint attaches the Offer Letter which contains a commission formula agreed to by Cicero, Intellor, and Rist.  Complaint ¶¶12, 14; Exhibit 1 to the Complaint.  The commission formula in the Offer Letter determined the amount of commission Cicero earned as an Intellor commissioned salesperson during his entire employment with Intellor.  Complaint ¶ 15.  At no time during Cicero's employment did Intellor and Cicero agree to change the commission formula in the Offer Letter.  Complaint ¶ 16.  At no time during Cicero's employment did Intellor and Cicero amend or change the commission formula in the Offer Letter in conformance with Labor Law § 191(1)(c) with a writing signed by both parties.  Complaint ¶ 17.

On or about April 1, 2012, Rist wrote an e-mail to Cicero regarding "Sales Commission" stating:  "Brian, Yes, I checked the numbers and through the end of 2011 the commission balance is $45,018."  Complaint ¶ 18; Exhibit 2 to the Complaint.

Rist's April 1, 2012 e-mail demonstrates Intellor and Rist agreed with Cicero's understanding and interpretation of the commission formula and the method of calculating Cicero's commissions in the Offer Letter.  The commission formula and method of calculating Cicero's commissions referenced in Rist's e-mail remained in effect during Cicero's employment with Intellor.  Complaint ¶ 19.  Pursuant to the commission formula in the Offer Letter, over the past six years, Cicero earned, and Intellor failed to pay, commissions in the amount of at least $400,000.  Complaint ¶ 20.  Cicero made a demand on Intellor and Rist for the payment of all

wages, commissions, and bonus owed to Cicero, but Intellor and Rist failed to pay.  Complaint ¶ 24.

Cicero seeks a money judgment against Intellor and Rist pursuant to Labor Law § 191(1)(c) and § 198(1-a) for the amount of unpaid wages owed to Cicero for the six years prior to the filing of the action, liquidated damages, attorneys' fees, prejudgment interest, court costs, and disbursements.  Complaint, Prayer.

Defendants' argument that Cicero's Complaint lacks sufficient factual background is incorrect.  Cicero's Complaint alleges sufficient facts and states a plausible claim for unpaid commissions by:  (1) identifying the parties; (2) alleging Cicero's dates of his employment; (3) attaching a copy of the Offer Letter, which also contains the commission formula agreed to by Cicero, Intellor, and Rist; (4) alleging the commission formula was not changed during the course of Cicero's employment; (5) attaching an e-mail from Rist demonstrating Rist and Intellor's understanding and agreement with Cicero's interpretation of the commission formula and method of calculating Cicero's commissions; (6) alleging Cicero earned over the past six years over $400,000 in unpaid commissions and wages; and (7) alleging Cicero made a demand for payment of his wages, commissions, and bonus owed to him, but Intellor and Rist refused to pay.  Cicero's allegations are sufficient to infer defendants' liability for violation of the Labor Law.

Defendants erroneously suggest paragraph 18 of Cicero's Complaint, which refers to Rist's April 1, 2012 e-mail, negates Cicero's commissions claim because this one e-mail is beyond the limitations period.  However, Intellor misses the significance of this e-mail.  Cicero is not claiming damages beyond the six year statute of limitations.  Rather, Cicero attached Rist's April 1, 2012 e-mail to his Complaint to demonstrate Intellor and Rist agreed with Cicero's understanding and interpretation of the commission formula and the method of calculating Cicero's commissions in the

Offer Letter.

Defendants' cases are easily distinguished. In *Giugliano, v. FS2 Capital Partners, LLC*, 2015 WL 5124796 (E.D.N.Y. 2015), plaintiff brought a case for age discrimination, retaliation, violation of the Labor Law, and various common law cause of action including breach of contract, conversion and unjust enrichment. While the court rejected plaintiff's contention that defendants failed to calculate commission as prescribed under a commission agreement, it was "because this [commission] claim is not alleged in the Complaint." *Id.* at *11. Here, to the contrary, Cicero's Complaint attaches the Offer Letter which contains the commission formula, refers specifically to the commission formula agreed to by Cicero, Intellor, and Rist, and alleges Intellor failed to pay Cicero his commissions. Complaint ¶¶ 12 – 15, 18 – 20; Exhibits 1 and 2 to the Complaint.

In *Burgis v. New York City Department of Sanitation*, 798 F.3d 63 (2d Cir. 2015), plaintiffs brought a putative class action alleging discrimination on the basis of race and national origin in violation of the Fourteen Amendment, Title VII, and state laws. In support of their claims, plaintiffs cited statistics but failed to allege sufficient facts or statistics giving rise to an inference of unlawful discrimination regarding the named plaintiffs. *Id.* at 69 – 70. Here, by contrast, Cicero's Complaint alleges specific facts regarding his claims against Intellor and Rist.

In deciding an employer's motion to dismiss a claim for unpaid commissions, courts routinely find an employee's allegations of liability under the Labor Law sufficient. For example, in *Arrouet v. Brown Bothers Harriman & Co.*, 2003 WL 22087454 (S.D.N.Y. 2003), a commissioned salesman sued his employer alleging breach of contract for failure to pay sales commissions. The employer moved to dismiss and the court denied the motion as to the claims for failure to pay sales commissions, holding "there is a sufficient pleading of a contract entered

-6-

into … to pay a salary plus commissions …. It is further alleged that [the employer] failed to pay commissions under this schedule." *Id.* at *3; *see also Piest v. Tide Water Oil Co.*, 27 F. Supp. 1020, 1021 (S.D.N.Y. 1939) ("The complaint in this action alleges an agreement under which the plaintiff was to receive commission on renewal sales. I think this is sufficient against a motion to dismiss.").

**B.      Cicero Sufficiently Alleges His Unpaid Bonus Was "Wages" Under the Labor Law**

Cicero alleges sufficient facts to state a claim for his unpaid bonus under the Labor Law. Cicero alleges in December 2007, Intellor, through Rist, presented Cicero with the Offer Letter. Complaint ¶ 12; Exhibit 1 to the Complaint. The Offer Letter specifies how Cicero would earn commissions, and contains a commission formula agreed to by Cicero, Intellor, and Rist. Complaint ¶¶ 13, 14. The Offer Letter specifically states "Commissions/**bonuses** will be paid monthly." Exhibit 1 to the Complaint, p. 2 (emphasis added).

Cicero alleges Intellor owes Cicero for a portion of a bonus Cicero earned and Rist and Intellor promised to pay. Complaint ¶ 21. On or about December 23, 2014, Rist wrote an e-mail to Cicero regarding "Bonus" stating: "I have added year-end bonus of $26,250 for 2014." Complaint ¶ 22; Exhibit 3 to the Complaint. Intellor subsequently paid $22,750 of Cicero's earned 2014 bonus of $26,250, leaving an amount due to Cicero for his 2014 bonus of $3,500. Complaint ¶ 23.

Defendants incorrectly argue "[t]here is no mention of any bonus in the [Offer] [L]etter…." Def. Mem. at 6. This is untrue. The Offer Letter specifically contains the word "bonuses" when it states on the second page: "Commissions/bonuses will be paid monthly". Thus, Intellor and Rist, as the author of the Offer Letter, expressed an intent for bonuses to be paid to Cicero and to be treated as earned commissions and wages.

-7-

Defendants argue bonuses are not wages because they are "incentive compensation" not covered by the definition of wages under the Labor Law.  However, the cases defendants cite are not applicable.  In *Trulove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224 (2000), the court stated it agreed with the definition of "wages" as "earnings for labor or services rendered … contemplat[ing] a more direct relationship between an employee's own performance and the compensation to which that employee is entitled."  The court rejected plaintiff's claim because plaintiff's bonus was not based upon his own performance, but instead upon the employer's overall performance, stating:

> The terms of defendant's bonus compensation plan did not
> predicate bonus payments upon plaintiff's own personal
> productivity nor give plaintiff a contractual right to bonus
> payments based upon his productivity.  To the contrary, the
> declaration of a bonus pool was dependent solely upon his
> employer's overall financial success.  In addition, plaintiff's share
> in the bonus pool was entirely discretionary and subject to the non-
> reviewable determination of his employer.  These factors, we
> believe, take plaintiff's bonus payments out of the statutory
> definition of wages.

*Id.* at 224.  By contrast, Cicero has a right to a bonus based on the Offer Letter and Rist's December 23, 2014 e-mail.  The Offer Letter describes a "commission/bonus" formula for Cicero's own productivity, and not the financial success of the company.  Further, Rist agreed to pay Cicero a bonus in the e-mail and then Intellor and Rist failed to pay Cicero the full amount of the bonus awarded.  Complaint ¶¶ 21 – 23.

Defendants' reliance on *Ireton-Hewitt v. Champion Home Builders Co.*, 501 F. Supp. 2d 341 (N.D.N.Y. 2007), is also misplaced.  In *Ireton-Hewitt*, the court held plaintiff's bonus did not satisfy the definition of wages under the Labor Law because the bonus program was "more in the nature of a profit sharing arrangement and was dependent, at least in part, on the financial success of the company."  *Id.* at 354.  However, the court also stated, "this rule is limited by the

-8-

long standing policy against the forfeiture of earned wages. Thus, if the incentive [bonus]

compensation payments were payments of earned wages, a plaintiff could not contract to forfeit

them." *Id.* at 353 (internal citations and quotations omitted). The rationale in *Ireton-Hewitt* does

not apply here because Cicero's commission/bonus plan was set forth in the Offer Letter directed

to Cicero and his productivity. Thus, Cicero's bonus became earned wages which could not be

forfeited once earned.

Intellor attempts to discredit paragraph 22 of Cicero's Complaint, along with the attached

e-mail (Exhibit 3 to the Complaint), with another incorrect statement that the Offer Letter

"contains no mention of any bonus ...." Def. Mem. at. 7. Once again, Cicero's Complaint

clearly alleges a claim for a bonus based on Rist's December 23, 2014 e-mail and Rist and

Intellor's own words in the Offer Letter stating:  "Commissions/bonuses will be paid monthly"

predicated upon Cicero's own performance ("Commissions paid for executed contracts upon

client invoicing). Exhibit 1 to the Complaint.

Numerous courts hold bonuses are considered "wages" for purposes of claims for

violation of the Labor Law or breach of contract.

In *Bader v. Wells Fargo Home Mortgage Inc.*, 773 F. Supp. 2d 397 (S.D.N.Y. 2011),

plaintiff filed a complaint against his previous employer in state court alleging various claims

including breach of an employment agreement for withholding bonus compensation. The

employer removed the case to federal court and moved to dismiss. The court denied the

employer's motion regarding various bonuses and unpaid commissions, stating "[s]ince the

Court must draw all inferences in [employee's] favor, the Court cannot conclude as a matter of

law that [employee] is not entitled to any bonus compensation for loans that he alleges were part

of his area's June and July volume. Accordingly, [the employer's] motion for judgment on the

-9-

pleadings is denied to the extent that [employee] can show that he has not been paid bonuses for

loans, other than loans in the pipeline, that were funded before his termination." *Id.* at 410; *see*

*also Vetromile v. JPI Partners, LLC,* 706 F. Supp. 2d 442, 448 – 449 (S.D.N.Y. 2010) (court

denied motion for summary judgment on issue of unpaid bonuses, stating "[i]f a contract is

vague about the nature of the bonus, some courts have held that '[w]hether unpaid incentive

compensation under a bonus plan constitutes a discretionary bonus or earned wages not subject

to forfeiture is an issue of fact'"); *Kieper v. Fusco Group Partners, Inc.*, 152 A.D.3d 1030, 1033

(3d Dep't 2017) ("As to plaintiff's claim for unpaid bonuses, we conclude that an issue of fact

exists regarding whether the bonuses were discretionary or part of plaintiff's compensation ....");

*Friedman v. Arenson Office Furnishings Inc.*, 129 A.D.3d 525 (1st Dep't 2015) (where

plaintiff's employment contract entitled her to yearly bonuses based on a calculation detailed in

the agreement "[d]efendant failed to establish that the bonuses are not 'wages' as defined by

article 6 of the Labor Law ....  The employment agreement creates 'a direct relationship between

[plaintiff's] own performance and the compensation to which [she] is entitled.'").  As stated in

*Weiner v. Diebold Group, Inc.*, 173 A.D.2d 166, 167 – 168 (1st Dep't 1991):

> The rule with respect to the payment of bonuses is well settled. An
> employee's entitlement to a bonus is governed by the terms of the
> employer's bonus plan.  It is also an accepted principle that an
> employment without specific termination date is terminable at will
> and that a sales representative paid on a commission basis is not
> entitled to commissions after termination of employment.  To be
> considered along with the above rules, however, is the long
> standing policy against the forfeiture of earned wages which
> applies to earned, uncollected commissions as well.  Upon
> statement of the above rules, it is clear, that the main issue to be
> determined in this case was whether the incentive compensation
> paid to plaintiff and similarly situated employees was a "bonus"
> payable at the discretion of the employer, and thus subject to
> forfeiture, or post employment commissions such as those earned
> by a sales representative as to which the employer has no right to
> withhold or, "earned wages" also not subject to forfeiture.  Given

the conflicting evidence and testimony concerning the nature of the incentive payment, and the inconsistent manner in which the forfeiture policy was applied, this issue presented a question of fact which should not have been taken away from the jury. While the parties to a contract are free to make any bargain they wish and are held to bargains made by them with their eyes open, they are not free to enter into contracts which violate public policy. Thus, if the incentive compensation payments were payments of earned wages, the plaintiff could not contract to forfeit them.

(internal citations and quotations omitted).

Cicero alleges sufficient facts to state a claim for payment of his unpaid bonus, and defendants' motion to dismiss his claim for the unpaid bonus payment must be denied.

## II.   CICERO ALLEGES SUFFICIENT FACTS TO STATE A CLAIM TO HOLD RIST LIABLE AS CICERO'S EMPLOYER UNDER THE LABOR LAW

Cicero properly alleges Rist is liable as Cicero's "employer" pursuant to Labor Law § 190(3), which broadly defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation , industry, trade, business, or service."

Contrary to what defendants suggest, an employee may simultaneously have multiple employers within the meaning of the Labor Law and FLSA. *Inclan v. New York Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 507 (S.D.N.Y. 2015).

In determining whether a person is an employer, courts look to the "economic reality" test set forth in *Herman v. RSR Services, Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009). *See also Chung v. The New Silver Palace Restaurant*, 272 F. Supp. 2d 314, 319 n. 6 (S.D.N.Y. 2003) ("Most courts agree that the test for determining whether an entity or person is an "employer" under New York Labor Law is the same as the test set forth in *Herman* for analyzing employer status under the Fair Labor Standards Act."); *Jeong Woo Kim v. 511 E. 5th Street, LLC*, 133 F. Supp. 3d 654, 665 (S.D.N.Y.

-11-

2015) ("The definitions of the term "employer" under the FLSA and the NYLL are coextensive.").

Under either the FLSA or the Labor Law, in determining whether an individual is an employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the economic reality presented by the facts of each case." *Jeong Wo Kim*, 133 F. Supp. 3d at 666.

Under *Herman*, the relevant factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman*, 172 F.3d at 139. "In general, under these factors, a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable" for unpaid wages. *Jeong Wo Kim*, 133 F. Supp. 3d at 667.

"The test of economic reality is an expansive one, and at the pleading stage is not demanding: 'allegations of operational control, on their own, are sufficient to establish status under the FLSA at the pleading stage.'" *Marasco v. American Expediting Co., Inc.*, 2018 WL 2074154, at *2 (E.D.N.Y. 2018) (*quoting Apple v. Atlantic Yards, Development Co., LLC*, 2012 WL 2309028, at *10 (E.D.N.Y. 2012) (motion to dismiss denied based on the following allegations: "Ratner is the head of the Forest City enterprise and a signatory to the CBA. He regularly conferred with Caldwell regarding the PATP and was involved in selecting the Staten Island worksite where the Plaintiffs labored for two months without receiving payment or actual training. Marshall was also a senior executive who was closely involved in the PATP. While Ratner and Marshall are not alleged to have played a role in the day-to-day administration of the

-12-

PATP, they exercised operational control. This is sufficient to allege their status as joint

employers.") (internal references to complaint omitted).

Cicero alleges sufficient facts to state a claim to infer Rist's liability as an "employer"

under the Labor Law. Rist was and is the Chief Executive Officer of Intellor and owned and

owns one hundred percent (100%) of the common stock of Intellor. Complaint ¶ 4.[3] Intellor

employed Cicero as a commissioned salesperson from December 2007 to October 10, 2018 when

Intellor, through Rist, terminated Cicero's employment without cause for the stated reason that

Intellor was "restructuring". Complaint ¶ 7.

In December 2007, Intellor, through Rist, presented Cicero with an offer letter dated

December 10, 2007 ("Offer Letter"). Complaint ¶ 12. While the Offer Letter does not comply

with New York Labor Law §191(1)(c) because it does not meet various requirements of the

statute, the Offer Letter does specify how Cicero would earn commissions. Complaint ¶ 13. The

Offer Letter contains a commission formula agreed to by Cicero, Intellor, and Rist. Complaint ¶

14. The commission formula in the Offer Letter determined the amount of commission Cicero

earned as a Intellor commissioned salesperson during his entire employment with Intellor.

Complaint ¶15.

On or about April 1, 2012, Rist wrote an e-mail to Cicero regarding "Sales Commission"

stating: "Brian, Yes, I checked the numbers and through the end of 2011 the commission

balance is $45,018." Complaint ¶ 18. Rist's April 1, 2012 e-mail demonstrates Intellor and Rist

agreed with Cicero's understanding and interpretation of the commission formula and the

---

[3] Cicero alleges "on information and belief" in paragraph 4 of his Complaint that "Rist owned and owns one hundred percent (100%) of the common stock of Intellor." In the Maryland Action, Rist submitted an affidavit in which he stated he was "the President, Chief Executive Officer, and sole shareholder of Intellor." Rist Affidavit ¶ 2. (Maryland Action ECF No. 5-1). The only other allegation in Cicero's Complaint alleged on "information and belief" is Cicero's allegation regarding Rist's residence. Complaint ¶ 3.

method of calculating Cicero's commissions in the Offer Letter.  The commission formula and

method of calculating Cicero's commissions referenced in Rist's e-mail remained in effect

during Cicero's employment with Intellor.  Complaint ¶ 19.

On or about December 23, 2014, Rist wrote an e-mail to Cicero regarding "Bonus"

stating: "I have added year-end bonus of $26,250 for 2014."  Complaint ¶ 22.  Rist had the

power to hire and fire employees, including Cicero, and Rist in fact hired Cicero and fired

Cicero.  Complaint ¶ 27.  Rist supervised and controlled the conditions of employment, including

those of Cicero.  Complaint ¶ 28.  Rist determined rates and method of payment, including those

of Cicero.  Complaint ¶ 29.  Rist maintained, either directly or indirectly, employment records,

including those of Cicero.  Complaint ¶ 30.  Rist willfully made the decision to refuse to pay

Cicero the commissions and bonus Cicero earned during the past six years.  Complaint ¶ 31.

These factual allegations are sufficient to infer Rist was Cicero's employer pursuant to the

Labor Law.

Defendants cite to *Perez v. Westchester Foreign Autos, Inc.*, 2013 WL 749497 (S.D.N.Y.

2013), but that case demonstrates Cicero's allegations are sufficient to state a claim against Rist

as his "employer."  In *Perez*, the court denied the defendants' motion to dismiss the complaint,

which, among other things, alleged two individuals were liable as plaintiffs' employers, stating:

> Officers and owners of corporations may be deemed employers
> under the FLSA where "the individual has overall operational
> control of the corporation, possesses an ownership interest in it,
> controls significant functions of the business, or determines the
> employees' salaries and makes hiring decisions." *Ansoumana v.
> Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192
> (S.D.N.Y.2003) (citation omitted); *see also Nichols v. Mahoney*,
> 608 F. Supp. 2d 526, 548 (S.D.N.Y.2009) ("Individuals with
> significant decision-making authority over a company may be
> liable as employers under the FLSA.") (citation omitted).
> Plaintiffs have alleged, inter alia, that Guiffre is the president and
> chairperson of BRAM, that Guiffre Jr. is a vice president of

-14-

> BRAM, and that both have, at all relevant times, owned and
> operated all BRAM automotive dealerships.  Plaintiffs have
> additionally alleged that the Guiffres have input and control over
> the policies and practices of BRAM and Westchester Toyota,
> maintained operational control over all of BRAM's automotive
> dealerships, and knew of the allegedly unlawful practices that
> violated the FLSA and the New York Labor Law, but failed to act
> to correct such action.  Moreover, the Guiffres are alleged, upon
> information and belief, to have the power to hire and fire
> employees, and to determine the manner in which Plaintiffs were
> compensated.  These allegations are alone sufficient to establish
> that the Guiffres may be considered "employers" ....

*Perez*, 2013 WL 749497, at *8 (internal references to complaint omitted).

Similarly, in *Leal v. Masonry Services, Inc.*, 2013 WL 550668 (E.D.N.Y. 2013), the court

denied the individual defendants' motion to dismiss the complaint alleging they were liable as

plaintiff's employer:

> The Moving Defendants are owners, principal shareholders, and
> directors of some or all of the Corporate Defendants and, in that
> capacity, made major personnel decisions and dominated day-to-
> day operations.  Specifically, Plaintiff alleges the Moving
> Defendants had the power to hire and fire employees, supervised
> and controlled employee work schedules and conditions of
> employment, determined the rate and method of payment for
> employees, and generated and maintained employment records.
> Plaintiff and other similarly situated employees worked under the
> direction of the Moving Defendants at the relevant times to this
> action.
>
> * * *
>
> Here, Plaintiff has alleged that the Moving Defendants, in their
> capacity as owners and directors of construction businesses
> operating within this district, had the power to hire and terminate
> employees, control work schedules and conditions of employment,
> and set wages.  Plaintiff's allegations of operational control,
> considered together, are sufficient to allege the Moving
> Defendants' status as Plaintiff's employer, as that term is defined
> under the FLSA and NYLL.  Several recent decisions interpreting
> the FLSA and NYLL — each of which involve factual allegations
> nearly identical to the ones set forth in Plaintiff's complaint —
> lend further support to the Court's conclusion.  *See Wilk v. VIP*

*Health Care Servs., Inc.*, 2012 WL 560738, at *8 (E.D.N.Y. 2012)
(denying motion to dismiss where plaintiff alleged that company's
officer and shareholder had "influence over hiring and firing
decisions, and the terms and conditions of [plaintiff's] employment
— including how, when, and how much [plaintiff] was to be
paid"); *Severin v. Project OHR, Inc.*, 2011 WL 3902994, at *6
(S.D.N.Y. 2011) (denying motion to dismiss where plaintiffs
alleged executive director of company "controlled personnel
decisions, and had the power to hire and fire, set wages, and
otherwise control the terms and conditions of the plaintiffs'
employment"); *see also Michalek v. Amplify Sports and Entm't
LLC*, 2012 WL 2357414, at *3 (S.D.N.Y. 2012) (granting leave to
amend complaint to add company's president as defendant based
on allegations that president "had the authority to hire and fire
employees for Amplify, had the authority to supervise employees
for Amplify, controlled employees' schedules for Amplify, and
determined the rate and method of payment for employees of
Amplify"); *Hernandez v. Habana Room, Inc.*, 2012 WL 423355, at
*3 (S.D.N.Y. 2012) ("Whether the plaintiff will ultimately be able
to ... establish that the individual defendants here had sufficient
operational control to be considered 'employers' under the FLSA
and New York Labor Law is a matter to be determined on
summary judgment or at trial.").  Indeed, the complaint's
allegations appear plausible because they suggest, when viewed as
a whole, a business enterprise of modest size and scope. *See Wilk*,
2012 WL 560738, at *9 (finding plaintiff's allegations sufficient
where "there [was] no reason to question the plausibility of
[plaintiff's] allegations in light of VIP's size or number of
employees [and] there [was] no allegation that VIP is a massive
enterprise with far-flung offices and a large number of
employees").

*Leal*, 2013 WL 550668, at *3 (internal references to complaint omitted).

In *Marasco v. American Expediting Co., Inc.*, 2018 WL 2074154 (E.D.N.Y. 2018), the

Court denied an individual defendant's motion to dismiss, stating:

Marasco alleges, and it is apparently undisputed, that Finnegan is
AZL's president.  In support of the conclusion that Finnegan
qualifies as an employer, Marasco further alleges as follows:

Mr. Finnegan operates and/or controls the day-to-
day operations and management of the Defendants.
Upon information and belief, at all relevant times,
Mr. Finnegan exercised decision-making authority

-16-

> over the terms and conditions of [Marasco and other
> workers], and had the authority to direct and control
> these employees' work performance, and/or was
> responsible for making operational and managerial
> decisions, including those with respect to
> employees' hours worked, rates/methods of pay,
> and hiring/firing.
>
> These allegations are not merely a boilerplate recitation of the
> economic realities test, "insufficient to state plausibly that
> [Finnegan] had operational control over [Marasco] as a matter of
> economic reality," as Finnegan argues.  While the phrasing is
> undoubtedly formulaic, it nevertheless explicitly alleges
> Finnegan's control over the terms and conditions of Marasco's
> employment, his work performance, hours, rate and method of pay,
> and hiring and firing.  Notwithstanding the absence of "supporting
> details" that Finnegan bemoans, the allegation is comparable to
> other pleadings that have been found sufficient to withstand similar
> motions. *See Leal*, 2013 WL 550668, at \*3 (*citing Wilk v. VIP
> Health Care Servs., Inc.*, 2012 WL 560738, at \*8 (E.D.N.Y. 2012);
> *Severin v. Project OHR, Inc.*, 2011 WL 3902994, at \*6 (S.D.N.Y.
> 2011); *Michalek v. Amplify Sports and Entm't LLC*, 2012 WL
> 2357414, at \*3 (S.D.N.Y. 2012) ).  There is accordingly no reason
> to dismiss the first nine causes of action for failure to adequately
> plead that Finnegan was Marasco's employer.

*Marasco*, 2018 WL 2074154, at \*2 (internal references to complaint omitted).

Judge Larimer's decision in *Tracey v. NVR, Inc.*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009),

is distinguishable.  There, "plaintiff's allegations establish only that, *upon information and belief*,

Madigan had the general authority to hire and/or fire employees, and that he maintained

employee records."  (emphasis original).

In contrast, here, except as discussed in footnote 4, Cicero's allegations relating to Rist's

liability are not alleged "on information and belief" and Cicero provide far more specific factual

allegations to infer Rist's liability as Cicero's employer under the "economic reality" test.

Defendants raise a factual dispute in their brief in arguing Rist cannot be held liable as

Cicero's employer:

-17-

> If Mr. Rist were, in fact, responsible for "determine[ing] the rates
> and method of payment" for Plaintiff, Compl. ¶ 29, it would stand
> to reason that Mr. Rist would have had to agree to any changes to
> the formula in the letter offering employment to Plaintiff in 2007.
> Mr. Rist, however, is not referenced in ¶¶ 17 and 18 of the
> Complaint because, Intellor, and not Mr. Rist, was his employer.
> This is consistent with there being no factual allegations in the
> Complaint, nor could there be, that Mr. Rist somehow acted
> outside the scope of his employment with Intellor such that he,
> personally, was Plaintiff's employer.

Def. Mem. at 9 – 10.

Defendants seem to argue, without citation to any case, and in contradiction to the cases

cited above, that for purposes of liability under the Labor Law (and FLSA), an employee only

has one "employer" and an individual such as Rist can only be an "employer" if he acted outside

the scope of his employment with Intellor.

As the cases cited above demonstrate, an employer can have multiple employers, and an

individual's liability as an "employer" is determined by the "economic reality" test, and not

whether the individual acted outside the scope of his employment.

Further, in making their argument, defendants erroneously place significance on the fact

that Cicero did not allege Rist was involved in making any change to the commission formula in

the Offer Letter. This of course, is precisely the point. Cicero alleges the commission formula in

the Offer Letter did not change during Cicero's employment. Thus, contrary to defendants'

argument, it is of no significance that Cicero did not mention Rist in paragraphs 17 and 18 of the

Complaint. The point of those paragraphs is to show the commission formula did not change

during Cicero's employment.

Cicero has alleged sufficient facts to infer Rist is liable as Cicero's "employer" and

defendants' motion to dismiss the First Cause of Action as to Rist should be denied.

## III.   CICERO IS ENTITLED TO LIQUIDATED DAMAGES

Cicero seeks liquidated damages as part of his relief for his First Cause of Action. Complaint ¶ 37.  Cicero erroneously sought liquidated damages in the amount of 300% for Cicero's unpaid wages from January 19, 2016.  Pursuant to Labor Law §198(1-a), Cicero is entitled to liquidated damages in the amount of 100% of his unpaid wages for the six years prior to the commencement of the action.

Defendants do not seek dismissal of Cicero's claim for liquidated damages, nor could they.  Rather, they seek to "strike as incorrect" Cicero's claim for liquidated damages in the amount of 300% even though defendants did not make a motion to strike pursuant to Rule 12 (f). Def. Mem. at 11.  Even if defendants' request to strike is deemed to have been brought pursuant to Rule 12 (f), their request to strike should be denied.

Rule 12(f) provides "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  "Motions to strike are generally disfavored and the courts should not tamper with the pleadings unless there is a strong reason for doing so." *Marshall v. New York State Public High School Athletic Ass'n, Inc.*, 290 F. Supp. 3d 187, 204 (W.D.N.Y. 2017) (internal citation and quotations omitted). *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone.").

Whether to grant a motion to strike is discretionary, and the movant has the burden to demonstrate prejudice by the inclusion of the alleged offending material. *Holmes v. Fisher*, 764 F. Supp.2d 523, 532 (W.D.N.Y. 2011). *See also I.B. Trading, Inc. v. Tripoint Global Equities, LLC*, 280 F. Supp. 3d 524, 546 (S.D.N.Y. 2017) ("[T]he movant should show that they will be

prejudiced if the attacked allegations are left in the pleadings."); *Mag Instrument, Inc. v. JS Products, Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("Motions to strike are generally regarded with disfavor because of the limited importance of pleadings in federal practice, and because they are often used as a delaying tactic.").

Defendants request to strike should be denied. By its plan language, Rule 12(f) does not allow a court to strike an "incorrect" statement in a pleading. Defendants also do not show, or even allege, they will be prejudiced if the reference to liquidated damages in the amount of 300% remains in the Complaint.

## IV.   CICERO ALLEGES SUFFICIENT FACTS TO STATE A CLAIM FOR A DECLARATORY JUDGMENT

In his Third Cause of Action, Cicero seeks a declaratory judgment pursuant to CPLR § 3001 that the Non-Compete is unenforceable in all respects and Cicero has not breached any of the terms of the Non-Compete, including the confidentiality provisions in the Non-Compete.

Cicero alleges sufficient facts to state a claim for a declaratory judgment. In July 2017, after Cicero had been employed with Intellor for almost ten years, Intellor mandated Cicero sign the Non-Compete. Complaint ¶ 44; Exhibit 4 to the Complaint. The Non-Compete is unenforceable in all respects because: (a) Intellor did not provide Cicero with any consideration for signing the Non-Compete; (b) Intellor terminated Cicero's employment on October 10, 2018 without warning and without cause; (c) the Non-Compete is overly broad and unreasonable in scope and duration; and (d) the Non-Compete violates public policy. Complaint ¶ 45. Intellor's counsel erroneously informed Cicero's counsel that Intellor believes Cicero breached the confidentiality provisions of the Non-Compete when Cicero made his demand for payment of the unpaid wages, commissions, and bonus. Complaint ¶ 46. Cicero denies he has breached the confidentiality provisions of the Non-Compete, and Cicero was and is entitled to keep documents

relating to his employment that allow him to establish and prove the amount of unpaid wages, commissions, and bonus he is owed from Intellor and Rist. Complaint ¶ 47. Cicero has not disclosed or provided any documents relating to his employment with any party except his counsel to enable his counsel to pursue Cicero's claims and causes of actions for unpaid wages, commissions, and bonus against Intellor and Rist. Complaint ¶ 48. Based on the competing claims regarding the Non-Compete, a justiciable controversy now exists between Cicero and Intellor regarding the enforceability of the Non-Compete. Complaint ¶ 49.

Contrary to defendants' argument (Def. Mem. at 13), these allegations do not establish Cicero breached the Non-Compete, and Cicero specifically alleges he did not breach the Non-Compete. Complaint ¶ 47. Rather, Cicero's allegations show there is a justiciable controversy between the parties as to the enforceability of the Non-Compete and whether Cicero breached any of its provisions.

In *Lia v. Saporito*, 909 F. Supp. 2d 149 (2012), the court denied a motion to dismiss a claim for a declaratory judgment under New York law after the defendants removed the case to federal court based on diversity jurisdiction, stating:

> "The sole consideration in determining a pre-answer motion to dismiss a declaratory judgment action is whether a cause of action for declaratory relief is set forth, not whether the plaintiff is entitled to a favorable declaration." *Palm v. Tuckahoe Union Free School District*, 95 A.D.3d 1087, 1089, 944 N.Y.S.2d 291 (2d Dept. 2012) (alterations, quotations and citation omitted); *see also State Farm Mutual Automobile Ins. Co. v. Anikeyeva*, 89 A.D.3d 1009, 1010 – 11, 934 N.Y.S.2d 196 (2d Dept.2011); *Matter of Tilcon New York, Inc. v. Town of Poughkeepsie*, 87 A.D.3d 1148, 1150, 930 N.Y.S.2d 34 (2d Dept.2011). "Therefore, the allegations must demonstrate the existence of a bona fide justiciable controversy . . ., defined as a real dispute between adverse parties, involving substantial legal interests for which a declaration of rights will have some practical effect." *Palm*, 95 A.D.3d at 1089, 944 N.Y.S.2d 291 (quotations and citations omitted); *see also* [*State Farm Mutual Ins. Co. v.*] *Rabiner*, 749 F.

Supp. 2d [94], at 102 [E.D.N.Y. 2010] ("To state a claim for a declaratory judgment, a plaintiff must allege that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); *Metropolis Seaport Associates, L.P. v. South Street Seaport Corp.*, 253 A.D.2d 663, 664, 678 N.Y.S.2d 317 (1st Dept.1998) (holding that the plaintiff's cause of action for declaratory relief "was properly sustained since the allegations of the complaint sufficiently set forth a bona fide justiciable controversy, the resolution of which may entail a declaration of the parties' rights and obligations."). "The remedy of a declaratory judgment is proper when the pleadings and affidavits submitted state a real controversy involving substantial legal interests, and it has been shown that a declaratory judgment would be useful." *Reliance Ins. Co. of New York v. Garsart Building Corp.*, 122 A.D.2d 128, 131, 505 N.Y.S.2d 160 (2d Dept.1986); *see also Anikeyeva*, 89 A.D.3d at 1011, 934 N.Y.S.2d 196 ("[W]here a cause of action is sufficient to invoke the court's power to render a declaratory judgment ... as to the rights and other legal relations of the parties to a justiciable controversy, ... a motion to dismiss that cause of action should be denied." (*quotations and citations omitted*)); *Tilcon New York*, 87 A.D.3d at 1150, 930 N.Y.S.2d 34 (accord).

In their complaint, the Lia parties allege, inter alia, that Lia purchased the East Windsor Property in compliance with American Honda's property requirements for the open point; that Lia purchased the EW Liquor license upon American Honda's rejection of the East Windsor Property in order to otherwise enhance the East Windsor Property; that Lia purchased the Hamilton Property upon which the Hamilton Honda Dealership was ultimately built; that Lia purchased, through certain limited liability companies, real property contiguous to the Hamilton Property "pursuant to the 2003 Agreement," which the Lia parties refer to as Hamilton Honda's "related assets"; and that Saporito improperly transferred a mortgage encumbering the Hamilton Honda Dealership's property to the contiguous property referred to as the "Frank's Nursery Property". Thus, the allegations in the Lia complaint are sufficient at the pleadings stage to state the existence of a bona fide justiciable controversy, i.e., a real dispute between the Lia parties and defendants involving substantial legal interests in real and personal property for which a declaration of rights will have some practical effect. Accordingly, the branch of Armstead's motion seeking dismissal of the Lia parties' declaratory judgment claim (second claim for relief) for failure to state a claim for relief is denied.

*Lia*, 909 F. Supp. 2d at 169 – 170 (internal references to complaint omitted).

Cicero's factual allegations are sufficient at the pleading stage to state the existence of a bona fide justiciable controversy regarding the Non-Compete that involves substantial legal interests for which a declaratory judgment will have some practical effect. *See State Farm Mutual Auto Insurance Co. v. Grafman*, 655 F. Supp. 2d 212, 223 (E.D.N.Y. 2009) ("To state a claim for a declaratory judgment, plaintiff must allege there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Here, plaintiff has sufficiently alleged that there is a substantial controversy concerning whether plaintiff is required to make payment to Milan to satisfy invoices which plaintiff contends were fraudulent." (internal citation and quotations omitted).

In making their motion and arguing the merits of Cicero's cause of action for a declaratory judgment, defendants complain Cicero "has provided no affidavit or evidence." (Def. Mem. at 14).  This, of course, is irrelevant and ignores Rule 8(a), which does not require a pleading seeking relief to contain an affidavit or evidence, but only requires "a short and plain statement of the claim showing the pleader is entitled to relief."

Defendants' motion to dismiss Cicero's Third Cause of Action should be denied because Cicero alleges sufficient facts to state a claim for a declaratory judgment.

## CONCLUSION

Cicero has sufficiently plead facts in his First and Third Causes of Action that are

plausible to allow the Court to draw the reasonable inference that defendants are liable for the

misconduct alleged.  Defendants' motion to dismiss should be denied.

Dated:  February 1, 2019                    **BURNS & SCHULTZ LLP**

                                            /s/  Jill K. Schultz
                                            Andrew M. Burns
                                            Jill K. Schultz
                                            179 Sully's Trail, Suite 202
                                            Pittsford, New York 14534
                                            Telephone:  (585) 385-7900
                                            E-mail:  aburns@burnsandschultz.com
                                            E-mail:  jschultz@burnsandschultz.com

                                            Attorneys for plaintiff Brian J. Cicero

-24-

## CERTIFICATE OF SERVICE

I hereby certify, that on this 1st day of February, 2019, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following participants on this case:

Joshua D. Steele - jsteele@harrisbeach.com

Thomas J. Sawyer - tj.sawyer@wbd-us.com

Jeffrey J. Golimowski - jeff.golimowski@wbd-us.com

/s/ Jill K. Schultz
Jill K. Schultz