UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRIAN J. CICERO,

                                            DECISION and ORDER

                            Plaintiff,

-vs-

                                            18-CV-6934 CJS

INTELLOR GROUP, INC.,
RICHARD A. RIST,

                            Defendants.

_____

INTRODUCTION

This is a diversity action in which Brian Cicero ("Plaintiff") seeks to recover alleged

unpaid wages from his former employer, Intellor Group, Inc. ("Intellor") and Intellor's Chief

Executive Officer, Richard Rist ("Rist"), in addition to other relief.  Now before the Court

is Defendants' motion (ECF No. 4) to dismiss the Complaint.  The application is granted,

and Plaintiff is granted leave to file a motion to replead.

BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and its

attachments, and are assumed to be true for purposes of this Decision and Order.

Plaintiff was employed by defendant Intellor as a salesman.  At all relevant times

defendant Rist was Intellor's chief executive officer and sole shareholder.   The

employment relationship between Plaintiff and Intellor lasted approximately eleven years,

between December 2007 and October 2018.

At all relevant times Plaintiff's compensation from Intellor was as set forth in a

December 2007 letter agreement ("the letter agreement").  The letter agreement, a copy

of which is attached to the Complaint, indicates that Plaintiff would receive a base salary and commissions earned on sales.  With regard to commissions, the letter agreement states that Plaintiff's commission would be 6% of his "direct sales" and 2% of his "channel sales." The letter agreement further states, in pertinent part: "Commission plans may be reviewed each quarter and adjusted appropriately to ensure alignment of your focus with the business goals for the quarter.  Commissions/bonuses will be paid monthly."  Although the preceding sentence references bonuses, the letter agreement does not otherwise refer to bonuses or indicate that Plaintiff could earn any type of bonus.  The letter agreement further noted that Plaintiff was an at-will employee.

An email message from Rist to Plaintiff attached to the Complaint indicates that as of April 1, 2012, Rist agreed that Plaintiff was owed a commissioner for the prior year (2011) in the amount of $45,018.00, though that is not part of the amount Plaintiff is seeking in this action.  Rather, the Complaint purportedly refers to the message as proof that the parties were in agreement as to how Plaintiff's commissions were calculated.[1] The Complaint alleges that the commission structure referenced in the letter agreement never changed during Plaintiff's tenure with Intellor.[2]

Another email from Rist to Plaintiff attached to the Complaint indicates that on December 23, 2014, Rist informed Plaintiff that he was giving Plaintiff a "year-end bonus of $26,250 for 2014."  The email does not indicate how Rist arrived at that figure, though it does note that Intellor's new-business revenue for 2014 had been below the prior year and only 50% of what had been projected.

---

[1] Compl., Ex. 2.
[2] Defendants contend that is actually incorrect, but nevertheless agree with the Complaint's assertion for purposes of the instant motion.

On August 1, 2017, Plaintiff and Intellor entered into a confidentiality/non-compete agreement ("the confidentiality agreement").  The confidentiality agreement, which is attached to the Complaint as Exhibit 4, in pertinent part includes the following recitations: 1) the contractual consideration provided to Plaintiff for signing the agreement was his continued employment at the agreed-upon compensation; 2) Plaintiff was prohibited from disclosing Intellor's confidential information to others or using it for his own personal gain; 3) Plaintiff's obligation under the agreement continued even if his employment was terminated; 4) all papers, computer media and records of any kind pertaining to Intellor's business and its clients were the property of Intellor and had to be returned to Intellor; 5) during Plaintiff's employment and for two years thereafter, Plaintiff was prohibited from competing with Intellor or soliciting business from Intellor's current or prospective clients; and 6) the agreement would be governed by the laws of Maryland.

On October 10, 2018, Intellor terminated Plaintiff's employment.  At that time, Plaintiff admittedly did not return all information in his possession belonging to Intellor. Rather, the Complaint indicates that he kept "documents relating to his employment that allow him to establish and prove the amount of unpaid wages, commissions, and bonus he is owed from Intellor and Rist," and that he disclosed this information to his attorney.[3] Because of this, Intellor has accused Plaintiff of breaching the confidentiality agreement.

On or about November 27, 2018, Plaintiff commenced this action in New York State Supreme Court, Monroe County.  The Complaint purports to assert three causes of action.  The first cause of action alleges that Plaintiff is entitled to unpaid wages pursuant to New York Labor Law sections 191(1)(c) and 198(1-a), with the wages consisting of

---

[3] Compl. at ¶ ¶ 47–48.

both unpaid commissions and a portion of the 2014 year-end bonus discussed earlier. With regard to commissions, the Complaint states: "Pursuant to the commission formula in the [letter agreement], over the past six years, Cicero earned, and Intellor failed to pay, commissions in the amount of at least $400,000." Complaint ¶ 20. The pleading does not further explain how Plaintiff arrived at that figure. As for the alleged unpaid bonus, the Complaint alleges that although Rist told Plaintiff that he would receive the $26,250.00 bonus for 2014, Plaintiff actually received only $22,750.00 of that amount, leaving $3,500.00 unpaid.

The first cause of action further alleges that along with Intellor, Rist is personally liable for the unpaid wages since he was Plaintiff's "employer" within the meaning of New York Labor Law. In this regard, the Complaint alleges that Rist had the power to hire and fire employees, supervise and control conditions of employment, determine rates and methods of payment and control Intellor's business records.

Finally, the first cause of action alleges that Plaintiff is statutorily entitled to liquidated damages since Intellor and Rist "willfully" failed to pay him what he was owed:

> Pursuant to New York Labor Law § 198(1-a), because of Intellor and Rist's willful failure to pay Cicero's wages, Cicero is entitled to liquidated damages in the amount of 100% of Cicero's unpaid wages up to January 18, 2016, and liquidated damages in the amount of 300% of Cicero's unpaid wages from January 19, 2016.

Compl. ¶ 37.

The Complaint's second cause of action alternatively alleges that Rist is personally liable for the alleged unpaid wages (commissions and bonus) under Labor Law § 630, since he is one of Intellor's ten largest shareholders.

4

The Complaint's third and final cause of action requests a declaratory judgment concerning the confidentiality agreement.  Specifically, the Complaint asserts, *inter alia*, that the agreement is unsupported by consideration, overly broad, unreasonable in scope and duration, and contrary to public policy.  The third cause of action seeks a declaration that the confidentiality agreement is unenforceable, and that Plaintiff did not violate the agreement by retaining documents relating to his clam for unpaid wages[4] after his employment was terminated and sharing them with his attorney.

On December 27, 2018, Defendants filed the subject motion to dismiss the Complaint.  Defendants first contend that the Complaint does not plead sufficient facts to establish a plausible claim that Plaintiff is owed either commissions or a bonus.  With regard to commissions, for instance, Defendant states that "the Complaint fails to identify a single sale that Plaintiff made for which he was not paid [a] commission." Defendants further contend that the alleged unpaid bonus does not qualify as wages under New York Labor Law § 190, since bonuses were not part of Plaintiff's agreed-upon compensation.  Additionally, Defendants assert that even assuming that the Complaint otherwise pleaded that Plaintiff is entitled to unpaid wages, it does plausibly plead that he is entitled to 300% liquidated damages.  Defendants further argue that the second cause of action, seeking to recover unpaid wages directly from Rist, is "premature and legally untenable" since Plaintiff has not yet established that he is owed wages by Intellor.  Finally, Defendants maintain that the third cause of action must be dismissed since the Complaint contains mostly "legal conclusions" concerning the confidentiality agreement, not factual

---

[4] *See*, Compl. ¶ 47 ("Cicero was and is entitled to keep documents relating to his employment that allow him to establish and prove the amount of unpaid wages, commissions, and bonus he is owed from Intellor and Rist.").

allegations.   Further, Defendants maintain that the few facts which have been alleged concerning the confidentiality agreement demonstrate that Plaintiff violated the agreement, by retaining Intellor's records after his employment was terminated and providing them to his attorney.

On February 1, 2019, Plaintiff filed papers in opposition.  As a preliminary matter, Plaintiff's response concedes that two aspects of the Complaint are deficient.   First, Plaintiff  acknowledges that the second cause of action is premature and should be dismissed without prejudice.   Second, Plaintiff admits that the demand in the first cause of action for 300% liquidated damages was erroneous.  Plaintiff has not moved to file an amended pleading, but has requested leave to do so if the Court should find that the Complaint has any "pleading deficiency."[5]

On March 1, 2019, Defendants filed a reply.   On June 27, 2019, counsel for the parties appeared before the undersigned for oral argument.   The Court has carefully considered the submissions and the arguments of counsel.

ANALYSIS

<u>Motions Under Rule 12(b)(6)</u>

The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

---

[5] ECF No. 7 at p. 3, n. 2.

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.' ") (quoting *Iqbal* ).

<u>New York Labor Law § § 191(1)(c) & 198(1-a)</u>

*The Claim for Unpaid Commissions*

Plaintiff's first cause of action alleges that Intellor and Rist owe him unpaid "wages" consisting of commissions and bonus money.   Defendants contend that the Complaint contains only the "bald assertion" that Plaintiff is owed at least $400,000 in commissions, which is insufficient to state a plausible claim, citing *Giuglianov. FS2 Capital Partners, Inc.*, No. 14-cv-7240, 2015 WL 5124796 at *15 (E.D.N.Y. Sep. 1, 2015).   Defendants state, for example, that the Complaint fails to set forth any facts concerning sales that would have resulted in Plaintiff earning such commissions.

Plaintiff insists that he has adequately pleaded a claim for commissions. In this regard, Plaintiff focuses primarily on various factual allegations concerning the terms of his employment and compensation, which are not disputed for purposes of this motion.

However, with regard to the claim that Plaintiff is owed commissions, Plaintiff merely reiterates the statement he "earned over the past six years over $400,000 in unpaid commissions and wages."[6]  Plaintiff contends that this statement is sufficient to survive dismissal under Rule 12(b)(6).

However, the Court agrees with Defendants that the Complaint fails to allege facts to support a plausible claim that Plaintiff is owed commissions.  Indeed, the Court agrees with Defendants that Plaintiff's claim on that point amounts to a "bald assertion" that he is owed at least $400,000 in commissions.  Plaintiff has plausibly alleged that the terms of his employment would have resulted in him earning commissions if he *had* made sales for Intellor.  However, there are simply no supporting facts alleged from which the Court could conclude either that Plaintiff made any particular sales[7] or that he is owed any amount of commission from Intellor, let alone $400,000.00.[8]  The cases cited by Plaintiff in opposition to the motion are factually or legally inapposite.[9]  Consequently, the portion

---

[6] Pl. Mem. of Law (ECF No. 7) at p. 5.

[7] The Complaint does not, for example, allege that Plaintiff earned commissions on a particular date or dates.  Rather, Plaintiff's response merely asserts that the commissions were earned during the six-year period leading up to the filing of the action. (ECF No. 7 at p. 1).

[8] *See, e.g., Giugliano v. FS2 Cap. Partners, LLC*, No. 14-CV-7240 ADS GRB, 2015 WL 5124796, at *15 (E.D.N.Y. Sept. 1, 2015) ("Giugliano fails to specify any particular sales transaction for which he is allegedly owed a commission . . . .  Giugliano has set forth no transactions at all. In addition, he fails to allege even the vaguest supporting details, including the approximate timing of the transactions; the approximate amount of commissions allegedly owed; and, most importantly from a contract standpoint, that FS 2 received the dealer manager fee that would legally entitle him to such commissions.  In the absence of these important facts, there is no plausible basis to conclude that Giugliano "earned" the commissions that he seeks to recover, as set forth in the Agreement. As a result, the Court is unable to reasonably infer that FS 2 and the individual Defendants are liable for the alleged failure to pay wages. Accordingly, the Court finds that the Plaintiff has failed to plausibly allege a cause of action under the NYLL based on unpaid wages.").

[9] The first case cited by Plaintiff involved a complaint containing more specificity regarding alleged unpaid commissions than the instant complaint. *See, e.g., Arrouet v. Brown Bros. Harriman & Co.*, 2003 WL 22087454 at *2 (S.D.N.Y. Sep. 8, 2003) ("The complaint goes on to allege specific commissions which should have been paid to Arrouet under the 1997/1998 compensation agreement but were not. Arrouet alleges that in 2001 he was denied $72,939 in commissions on the Alliance Capital and UBS Global Asset Management accounts. He also alleges that in 2002 he was entitled to commissions on $800,000 in sales as of the time of the complaint (November 4, 2002). The complaint alleges that Arrouet would be entitled to payment of the commissions no later than February 15, 2003, but that BBH had communicated

of the first cause of action seeking to recover unpaid commissions is dismissed for failure to state a claim.

*The Claim for Unpaid Bonus*

Defendants also maintain that the alleged unpaid bonus ($3,500) is not "wages" under the New York Labor Law since the letter agreement, which Plaintiff contends provided the sole basis for his compensation, does not indicate that he was entitled to any bonuses.  Rather, Defendants state that based on the allegations in the Complaint, any such year-end bonus was "discretionary and unearned," and that such "incentive compensation" is not considered "wages" under New York Labor Law § 190(1).  Plaintiff responds that the alleged unpaid bonus is wages since the letter agreement setting forth his compensation contains the statement, "Commissions/bonuses will be paid monthly."

New York Labor Law § 190(1) states in pertinent part as follows: ""Wages" means the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis."

> Courts have construed this statutory definition as excluding certain forms of "incentive compensation" that are more in the nature of a profit-sharing arrangement and are both contingent and dependent, at least in part, on the financial success of the business enterprise.

*Truelove v. Ne. Cap. & Advisory, Inc.*, 95 N.Y.2d 220, 223–24, 738 N.E.2d 770, 771–72 (2000).

The Court agrees with Defendant that the instant Complaint fails to plausibly allege that the purported unpaid bonus was "wages" to which Plaintiff was entitled.  The letter

---

to him that the commissions would not be paid because of Arrouet's violation of BBH rules.").  The second case cited by Plaintiff is devoid of factual detail and is also from 1939 and therefore did not involve the *Twombley* pleading standard. *See, Piest v Tide Water Oil Co.*, 27 F. Supp. 1020 (S.D.N.Y. 1939).

agreement upon which Plaintiff relies to establish his wage claims indicates that Plaintiff could earn two types of compensation – salary and commissions.  The letter agreement gives no indication that Plaintiff was entitled to any type of bonus on top of his salary and any earned commissions.  Although the agreement contains the statement "commissions/bonuses will be paid monthly," such fact does not plausibly establish that Plaintiff was entitled to a bonus.[10]

Moreover, the Complaint does not allege facts indicating that the bonus was "earned" by Plaintiff based on his performance.  Nor does the pleading allege that the bonus was calculated using some agreed-upon bonus formula.  Rather, the reasonable inference to be drawn from the email upon which Plaintiff bases his claim is that the bonus was discretionary and based on Intellor's overall financial success for the year, as opposed to Plaintiff's own performance.  In that regard, Rist's email states, in its entirety:

> *I have added* year-end bonus of $26,250 for 2014.  *We will finish the year @200K in new business revenue* which is slightly lower than what we did last year and @50% of what was targeted.  I know next year is going to be a challenge but we need to keep the focus on new business opportunities. We appear to be ready to start WebEx efforts and we are going to push hard on other technology fronts in 2015 to hopefully have new services/technologies that can take up an[y] slack in the ATTC product gaps (if there is one).  Thanks!  Have a good Christmas and New Year.

Compl., Ex. 3 (emphasis added).  Consequently, the portion of the first cause of action seeking to recover unpaid bonus money is dismissed for failure to state a claim.

### Rist's Status as Plaintiff's Employer

Defendants additionally assert that even if the first cause of action adequately

---

[10] When discussing the bonus claim, Plaintiff asserts that, "The Offer Letter [letter agreement] describes a 'commission/bonus' formula for Cicero's own productivity, and not the financial success of the company." ECF No. 7 at p. 8.  That assertion is incorrect, since the letter agreement does not contain any "formula" for calculating a bonus.

states a claim against Intellor, it does not state a claim against Rist since it fails to allege facts that plausibly demonstrate that Rist was Plaintiff's employer.   The Court again agrees.   The law on this point is presently well settled and primarily involves a consideration of four factors:

> [W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.   These factors are to be considered in the totality of circumstances. Further, none of these factors is dispositive, nor are they exclusive. In addition to these factors, the Court may also consider any other relevant evidence of functional control over workers[.]

*Diaz v. Bronx Pawnbroker Inc.*, No. 18 CIV. 7590 (ER), 2021 WL 809490, at *5 (S.D.N.Y. Mar. 2, 2021) (citations and internal quotation marks omitted).  In asserting that Rist is an "employer" under the New York Labor Law, the Complaint merely makes conclusory assertions parroting these four factors.   The Complaint contains no supporting factual detail that would make the assertions plausible, as opposed to merely possible. Consequently, the first cause of action fails to state a claim against Rist.

### Liquidated Damages for Willful Conduct

Defendants also argue that the portion of the first cause of action demanding 300% liquidated damages must be dismissed since there is no legal basis for such relief here. Specifically, Defendants maintain that New York Labor Law § 194 provides for 300% liquidated damages, but only for "sex-based" wage discrimination under Labor Law § 194. In response, Plaintiff now admits that his demand for damages under the first cause of action was "erroneous" insofar as it requested 300% liquidated damages.   Pl. Mem. of Law at p. 19.  Consequently, in addition to the reasons already discussed, the first cause

of action fails to state an actionable claim insofar as it demands 300% liquidated damages.

<u>New York Business Corporation Law § 630(a)</u>

The Complaint's second cause of action alleges that Rist is personally liable for the alleged unpaid wages (commissions and bonus) under Labor Law § 630, since he is one of Intellor's ten largest shareholders.  Defendants contend that this claim must be dismissed since a condition precedent to such a claim is that the plaintiff must first obtain a judgment against the corporation, and that the judgment be unsatisfied by the corporation, which is not the case here.  In his response, Plaintiff now agrees that the claim is premature and should be dismissed.  Accordingly, the Court dismisses the second cause of action without prejudice.

<u>The Request for a Declaratory Judgment</u>

The Complaint's third cause of action requests a declaratory judgment that the non-compete agreement is unenforceable, and that Plaintiff did not breach the agreement in any event.

*Enforceability of the Confidentiality Agreement*

With regard to the alleged unenforceability of the agreement, the Complaint states as follows:

> The Non-Compete [Agreement] is unenforceable in all respects because (a) Intellor did not provide Cicero with any consideration for signing the Non-Compete; (b) Intellor terminated Cicero's employment on October 10, 2018 without warning and without cause; (c) the Non-Compete is overly broad and unreasonable in scope and duration; and (d) the Non-Compete violates public policy.

Compl. at ¶ 45.  However, Defendants contend that the Complaint fails to state a plausible

claim that the confidentiality agreement is unenforceable, and the Court agrees.

As a preliminary matter, the assertions that the confidentiality agreement is "overly broad and unreasonable in scope and duration" and "violates public policy" are legal conclusions that are not entitled to be accepted as true.  The Court is not required to dissect the confidentiality agreement and consider whether there is any possible way that it could be "overly broad," "unreasonable in scope and duration" or "violative of public policy."  Rather, Plaintiff is required to plead facts that would make those assertions plausible, which he has not done.

Similarly, the bald assertion that Intellor did not provide Plaintiff with consideration for signing the agreement is a legal conclusion not entitled to be accepted as true. Beyond that, the Complaint does not explain Plaintiff's assertion that the agreement lacked consideration.   The bald assertion that Plaintiff received no consideration for signing the agreement is also not plausible, since the agreement expressly states that the consideration for the agreement was Plaintiff's continued employment, and Plaintiff, who was evidently an at-will employee, admittedly remained employed by Intellor for more than a year thereafter.   Under Maryland law, which applies to disputes involving the confidentiality agreement,[11] an employer's continued employment of an at-will employee for a substantial period beyond the execution of the agreement has been held to be adequate consideration for a restrictive employment agreement.  *See, Simko, Inc. v. Graymar Co.*, 55 Md. App. 561, 567, 464 A.2d 1104, 1107 (1983) ("[T]he continuation of employment for a substantial period beyond the threat of discharge is sufficient consideration for a restrictive covenant."); *see also, Hearn Insulation & Improvement Co.*

---

[11] Defendants point out that the confidentiality agreement has a Maryland choice of law provision, and Plaintiff has not disputed that point.

*v. Carlos Bonilla*, No. CIV. A. AW-09-990, 2010 WL 3069953, at *6 (D. Md. Aug. 5, 2010) ("The law clearly provides that continued employment of an at-will employee for a significant period constitutes sufficient consideration for a restrictive covenant where there is no allegation of bad faith or other compromising circumstance.") (citing *Simko v.Graymar Co.*); *Mona Elec. Grp., Inc. v. Truland Serv. Corp.*, 56 F. App'x 108, 110 (4th Cir. 2003) ("In Maryland, the continuation of at-will employment for a substantial period of time is adequate consideration for a non-solicitation agreement. *See Simko v. Graymar*, 55 Md.App. 561, 464 A.2d 1104, 1107 (Md.Ct.Spec.App.1983). The record indicates that after signing the non-solicitation agreement, Gerardi continued to work for Mona for almost a year.  Therefore, the court finds that Gerardi's non-solicitation agreement is supported by adequate consideration and therefore enforceable.") (internal citation omitted).

Moreover, for this same reason, the fact that Intellor eventually terminated Plaintiff, as an at-will employee, "without warning and without cause," seems to the Court to have no bearing on the enforceability of the confidentiality agreement. *See, Scott v. Merck & Co.*, 497 F. App'x 331, 334 (4th Cir. 2012) ("Maryland follows the common law principle of employment at will, meaning that an employment contract of indefinite duration may be terminated by either party at any time. *Adler v. Am. Standard Corp.*, 291 Md. 31, 432 A.2d 464, 467 (1981).").  At least, the Complaint itself offers no explanation for how that fact would be relevant to that point.  On the other hand, the confidentiality agreement expressly provides that "[t]he Employee's obligation to maintain the confidentiality and security of Confidential Information remains even after Employee's employment with

Company ends."[12]

For all of these reasons, that Court finds that the Complaint fails to state an actionable claim for a declaratory judgment that the confidentiality agreement is unenforceable.

*Plaintiff's Alleged Non-Violation of the Confidentiality Agreement*

The Complaint alleges that Plaintiff is entitled to a declaration that he did not violate the confidentiality agreement, for essentially two reasons:  First because he is only using the information in support of his claim for unpaid wages; and, second, because he only disclosed the information to his attorney.[13]  Notably, in this regard, Plaintiff does not claim that the information he retained falls outside the scope of the of the confidentiality agreement.  Rather, as Defendants describe it, Plaintiff essentially maintains that there is a "self-help exception" built into the confidentiality agreement.   Defendants, on the other hand, maintain that there is no such exception, and that,  if anything, the Complaint establishes that Plaintiff violated the confidentiality agreement, and that the Court should therefore dismiss the request for a declaratory judgment on this point, for failure to state a claim.

In response to Defendants' motion, Plaintiff asserts that to state an actionable claim for a declaratory judgment and survive a Rule 12(b)(6) motion, he need only allege the existence of "justiciable controversy between the parties."[14] Plaintiff maintains that he has done this, and that Defendants' motion on this point must therefore be denied.

---

[12] Compl., Ex. 4 at p. 2.
[13] *See*, Compl. at ¶ ¶ 47-48 ("Cicero was and is entitled to keep documents relating to his employment that allow him to establish and prove the amount of unpaid wages, commissions, and bonus he is owed from Intellor and Rist. . . .  Cicero has not disclosed or provided any documents relating to his employment with any party except his counsel to enable his counsel to pursue Cicero's claims and causes of actions for unpaid wages, commissions and unpaid bonus against Intellor and Rist.").
[14] Pl. Mem. of Law at pp. 21–23.

The Court, though, disagrees with Plaintiff's description of the pleading requirements for a declaratory judgment claim.  Rather, to state such a claim, in addition to showing that a justiciable controversy exists, the plaintiff must allege facts that plausibly show he is entitled to relief on an underlying substantive claim:

> The [Declaratory Judgment Act, 28 U.S.C. § § 2201-2202] gives a district court the discretion to "declare the legal rights and other legal relations of any interested party seeking such declaration." *Id*. § 2201(a). But that discretion does not extend to the declaration of rights that do not exist under law. Like a preliminary injunction, a declaratory judgment relies on a valid legal predicate. The DJA is "procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), and "does not create an independent cause of action[.]"

*Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012).   "The request for a declaratory judgment is not a cause of action; it is a request for a remedy that does not exist independent of a plausible underlying claim for relief." *Lisa Coppola, LLC v. Higbee*, No. 1:19-CV-00678, 2020 WL 1154749, at *10 (W.D.N.Y. Mar. 10, 2020) (citing *Chevron Corp. v. Naranjo*).

Here, as Defendants point out, the Complaint pleads facts that on their face seem to indicate that Plaintiff violated the confidentiality agreement by retaining and utilizing records belonging to Intellor.  Apart from making bald assertions, the Complaint does not allege facts explaining why Plaintiff was legally entitled to retain and use those records in his lawsuit against Intellor, and why, therefore, he would be entitled to a declaration that he did not breach the agreement.  Consequently, the Complaint fails to state a claim that Plaintiff is entitled to a declaratory judgment on this point.

<u>Plaintiff's Request for Leave to Amend</u>

As mentioned earlier, Plaintiff has requested leave to file an amended complaint should the Court find that the Complaint has any "pleading deficiency," and the Court has now found that the entire Complaint must be dismissed.  Plaintiff, though, has not submitted a proposed pleading, since he believes that he cannot do so without attaching records that are covered by the confidentiality agreement.  Defendants' reply brief does not address Plaintiff's request for leave to amend.  During oral argument, however, Defendants' counsel acknowledged that Plaintiff might be able to replead his claims, provided that he did not utilize information protected by the confidentiality agreement. Indeed, counsel indicated that nothing had prevented Plaintiff from doing so earlier.

 The Court will allow Plaintiff to file a motion to amend.  In that regard, the legal principles governing Plaintiff's request for leave to amend are well settled:

> Pursuant to Fed.R.Civ.P. 15, a court should "freely" give leave to amend, "when justice so requires." However, a court may deny leave to amend for any number of "good reason[s], including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, No. 03-7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished, citation omitted).

*Dapson v. City of Rochester, New York*, No. 17-CV-6704 CJS, 2019 WL 591692, at *7 (W.D.N.Y. Feb. 12, 2019).  Here, there is no indication that any of the exceptions to the liberal amendment rule apply, therefore the Court will allow Plaintiff an opportunity to cure the deficiencies noted earlier.

18

CONCLUSION

Defendants' motion to dismiss (ECF No. 4) is granted, though with leave for Plaintiff to file a motion to amend.  Unless the parties notify the Court in writing that they have stipulated to a different briefing schedule (or that they have stipulated to the filing of an amended pleading, thereby obviating the need for further motion practice), Plaintiff shall file and serve any motion to amend within thirty (30) days of the date of this Decision and Order, and any additional briefing shall be in accordance with the Local Rules of Civil Procedure.  In the event that Plaintiff fails to file a motion to amend within 30 days or within a different time frame to which the parties may agree, the action will be dismissed.

SO ORDERED.

Dated: Rochester, New York
      April 30, 2021

ENTER:

CHARLES J. SIRAGUSA
United States District Judge